**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| MICHAEL KOHAN and SHIRLEY KOHAN | ) | |
| Plaintiffs, | ) | 2:26-cv-00363 |
| v. | ) | |
| CITY OF LATROBE, et al., | ) | |
| Defendants. | ) | |

## OPINION

**Mark R. Hornak, United States District Judge**

Plaintiffs Michael and Shirley Kohan (the "Kohans") brought this action as a civil rights claim challenging the City of Latrobe's failure to act to restrain alleged code violations by another family, the Szekelys, who lived on property abutting the Kohans' residence. Before the Court are two Motions to Dismiss, each seeking to dismiss the Complaint in full. Defendants Jeremy and Jessica Szekely (the "Szekelys") move to dismiss the Complaint as to them for failure to state a claim. The remaining defendants, the City of Latrobe and officials Mayor Eric Bartels, former City Manager Terry Carcella, Police Chief Richard Bosco, Director of Planning and Development Daniel Weimer, and Code Enforcement Officer David Matheny, all sued in their individual and official capacities (collectively referred to as "Latrobe"), separately move to dismiss the Complaint for failure to state a claim. For the reasons set out below, the Motions to Dismiss are GRANTED.

## BACKGROUND

The Kohans allege that between July 1, 2023, and June 4, 2025, they made multiple complaints to Latrobe about violations of the city's maintenance and quality of life codes at the Szekelys' property, including excessive noise, use of amplified noise equipment, unpermitted

vehicle traffic, unpermitted business use of the property, the unpermitted erection of a fence, and the presence of animals, rodents, and garbage. Compl. ¶¶ 11–12.

The Complaint alleges that various city officials individually and jointly made promises and manifestations to the Kohans that the City was taking or would take enforcement actions or otherwise would remedy the violations, but were in fact engaging in a conspiracy to refuse to enforce city codes and instead renovate the Szekelys' property pursuant to a plan to beautify or improve the quality of life at the Szekelys' property. Compl. ¶¶ 28, 36. More specifically, the Complaint alleges that Mayor Bartels announced his intention to resurrect the Latrobe Code Enforcement Board at a City Council meeting on February 11, 2024, and that Director of Code Enforcement Weimer announced at a City Council meeting on April 8, 2024, that Latrobe was "moving forward and forcing action" on the Szekelys' property. Compl. ¶¶ 16–17. At a City Council Meeting on July 8, 2024, Police Chief Bosco stated that the police and code enforcement board were communicating, that the Kohans' complaints were "valid," and that police were dispatched to the Szekelys' property in response to the Kohans' complaints, but the Szekelys' conduct nevertheless continued. Compl. ¶ 18.

The Kohans allege they continued to raise complaints with Latrobe and provide evidence of violations at the Szekelys' property. However, they go on to say that Latrobe gave inconsistent responses about whether the city would be able to assist them and concealed their true plans to engage in a "concerted plan to allow [the Szekelys] to dwell in squalor, dwell in a nuisance property[,] and ignore[ the Kohans'] complaints," thus bringing a risk of harm to the Plaintiffs. Compl. ¶ 28. The Plaintiffs allege they suffered emotional distress from proximity to the code violations on the Szekelys' adjoining property. Compl. ¶ 46.

Plaintiffs make three claims against all Defendants: Counts I and III contain claims under 42 U.S.C. § 1983 for violations of Plaintiffs' substantive due process and equal protection rights and Defendants' failure to intervene. Count II is a § 1983 conspiracy claim.

## DISCUSSION

Both pending Motions seek dismissal of all claims pursuant to Federal Rule of Civil Procedure 12(b)(6). A Motion to Dismiss under Rule 12(b)(6) tests the legal sufficiency of the complaint. *See Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993). In reviewing a Motion to Dismiss under Rule 12(b)(6), the Court conducts a two-part analysis: first, the Court separates the factual and legal elements of a claim, disregarding any legal conclusions. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009). Then, the Court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. City of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (quoting *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 374 n.7 (3d Cir. 2002)). However, the Court need not accept as true any unsupported conclusions or inferences nor any "threadbare recitals of elements of a cause of action." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). As such, a plaintiff's factual allegations must "raise a right to relief above the speculative level" and state a "plausible claim for relief" to survive a motion to dismiss. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

In this case, the Szekelys and Latrobe have separately moved to dismiss the entire Complaint for failure to state a claim. The Szekelys move to dismiss on multiple grounds, including that the Complaint pleads insufficient facts to raise a claim that the Szekelys are state actors or were acting under color of state law. Latrobe moves to dismiss on multiple grounds, including that the Complaint does not allege conduct sufficient to raise claims under the asserted

causes of action. If the Court finds that dismissal is warranted on one ground, it is within the Court's discretion to decline to address alternative grounds for dismissal, consistent with the principles of judicial economy and restraint.

**I. Szekelys' Motion to Dismiss**

The Szekely Defendants move dismiss in part on the grounds that Plaintiffs' Complaint, taken as true, does not allege sufficient facts for the Court to find that the Szekelys' are state actors or that they acted under color of state law. (ECF No. 20 at 5). For Plaintiffs to "state a claim under § 1983, [they] must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *Porter v. Pennsylvania Dep't of Corr.*, 974 F.3d 431, 437 (3d Cir. 2020) (quoting *West v. Atkins*, 487 U.S. 42, 48 (1988)). The requirement that a defendant is acting under color of state law must also be present in a § 1983 conspiracy claim. *Jutrowski v. Twp. of Riverdale*, 904 F.3d 280, 294 n.15 (3d Cir. 2018).

Plaintiffs contend that the Szekelys acted under color of state law because they acted with the help of or in concert with state officials, citing *Kach v. Hose*, 589 F.3d 626, 646 (3d Cir 2009). (ECF No. 22 at 14–15). However, the *Kach* Court explicitly did not evaluate the "in concert with state officials" test for action under the color of state law. *Id.* The key question underlying the inquiry to determine whether a defendant acted in concert with state officials is whether there is "such a close nexus between the State and *the challenged action* that seemingly private behavior may be fairly treated as that of the State itself." *Borrell v. Bloomsburg Univ.*, 870 F.3d 154, 160 (3d Cir. 2017) (citing *Leshko v. Servis*, 423 F.3d 337, 339 (3d Cir. 2005) (emphasis in original). Action under color of state law must consider the totality of the circumstances and "requires that one liable under § 1983 have exercised power possessed by virtue of state law and made possible

only because the wrongdoer is clothed with the authority of state law." *Harvey v. Plains Twp. Police Dep't*, 635 F.3d 606, 608–09 (3d Cir. 2011). At the motion to dismiss stage, the totality of the circumstances is evaluated taking as true all well pled facts in the Complaint.

Although the Complaint sufficiently alleges facts that show that Plaintiffs were injured by the Szekelys' actions, it fails to provide facts sufficient for a finding that the Szekelys acted under color of state law. Plaintiffs concede that the Complaint alleges the Szekelys were only engaged in state action to the extent they were "beneficiaries" of Latrobe's alleged refusal to engage in enforcement actions against the Szekelys and the conspiracy to hide the refusal from the Kohans. (ECF No. 22, at 11).

The Szekelys' status as beneficiaries of state action (or in this case, state inaction) is not sufficient to support the conclusion that they are state actors or acted under color of state law. A liberal reading of the Complaint only reveals that the Szekelys were allegedly the targets of Latrobe's decision not to engage in enforcement of municipal code violations against the Szekelys; the Complaint does not allege any actions that create the required "close nexus" between the Szekelys and Latrobe such that the Szekelys may be "fairly treated … as the state itself." *See Borrell*, 870 F.3d at 160. The crux of the Complaint as it relates to the Szekelys is that they *did not* act and were instead passive beneficiaries of Latrobe's alleged non-enforcement policy toward them.

It is not clear how the Plaintiffs wanted the Szekelys to reject this policy of non-enforcement, but even if they accepted it as the Complaint alleges, this acceptance was not an exercise of "power possessed by virtue of state law" and was not "made possible only because the [Szekelys were] clothed with the authority of state law." *Harvey*, 635 F.3d at 608–09. Private individuals' status as beneficiaries of a state policy is wholly independent of any power those

individuals possess under state law and status as a beneficiary of a state policy does not, on its own, clothe the beneficiary with the authority of state law. The Court therefore grants the Szekelys' Motion to Dismiss on Counts I and III.

To the extent the Complaint alleges that the Szekelys were members of a conspiracy to engage in a policy of non-enforcement of municipal codes with Latrobe officials, the Complaint does not allege facts sufficient to reach that conclusion. The Complaint generally alleges that the "Defendants, jointly and severally … concealed from the Plaintiffs a plan not to enforce the various municipal code violations[,] but rather to remodel or renovate the Szekely property." Compl. ¶ 37. Other than the allegations that the Szekelys were engaged in a pattern of maintenance and quality of life code violations, the Complaint does not allege any affirmative actions by the Szelekelys specifically; instead, they rely on the imprecise catch-all term "Defendants" without distinguishing between Latrobe officials and the Szekelys. Nevertheless, broadly construing the use of "Defendants" in the Complaint to include the Szekelys where logical, the Complaint does not allege any specific facts to support the existence of an agreement or conspiracy to violate the Plaintiffs' federal statutory or constitutional rights that includes the Szekelys as participants in such a conspiracy, much less one that includes them acting under color of state law.

Plaintiffs argue that conspiracies are by their nature secret, and so it would be premature to dismiss the conspiracy claim against the Szekelys. (ECF No. 21 at 16). However, to survive a motion to dismiss, mere conclusory statements that a conspiracy or agreement existed are not enough; there must be "enough factual matter (taken as true) to suggest that an agreement was made." *Twombly*, 550 U.S. at 556. The Complaint does not contain any factual matter regarding the Szekelys' participation in a conspiracy beyond conclusory statements. The Court therefore

grants the Szekelys' Motion to Dismiss on Count II.

For the reasons stated above, the Complaint against Jeremy A. Szekely and Jessica R. Szekely is DISMISSED in its entirety.

**II. Latrobe's Motion to Dismiss**

The Kohans' § 1983 claims in Counts I and III allege that Latrobe violated their constitutional rights by (1) implementing a selective non-enforcement policy towards the Szekelys in violation of the Kohans' substantive due process rights; (2) creating a "class of one" in violation of the Kohans' equal protection rights; and (3) failing to intervene to prevent danger posed by the Szekelys' code violations. Compl. ¶¶ 41–42, 57. Count II's § 1983 conspiracy claim alleges Latrobe officials concealed the non-enforcement policy from the Kohans while allowing the Szekelys' violations to continue. Compl. ¶¶ 48–49.

A. *Substantive due process.*

To state a § 1983 claim for a substantive due process violation, the Kohans must allege that Latrobe deprived them of a "particular interest at issue [that] is protected by the substantive due process clause and the government's deprivation of that protected interest shocks the conscience." *Chambers ex rel. Chambers v. Sch. Dist. Of Philadelphia Bd Of Educ.*, 587 F.3d 176, 190 (3d Cir. 2009) (quoting *Chainey v. Street*, 523 F.3d 200, 219 (3d Cir. 2008) (overruled in part, on other grounds). Defendants argue that the Kohans have failed to allege conduct that shocks the conscience.

The "'touchstone of due process' is protection against arbitrary government action. Government action is 'arbitrary in the constitutional sense' when it is 'so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience.'" *L.R. v. Sch. Dist. of Philadelphia*, 836 F.3d 235, 246 (3d Cir. 2016) (quoting *Cty. of Sacramento v. Lewis*, 523 U.S.

833, 845–47 (1998). This "shocks the conscience" test "is not precise" and "varies depending on the factual context," but "only the most egregious official conduct" qualifies. *Eichenlaub v. Twp. of Indiana*, 385 F.3d 274, 285 (3d Cir. 2004) (quoting *United Artists Theatre Circuit, Inc. v. Township of Warrington,* 316 F.3d 392, 399 (3d Cir. 2003)). Examples of potentially conscience-shocking behavior that the Third Circuit states might rise to the requisite level of egregiousness include "corruption or self-dealing," "bias against an ethnic group," a "virtual taking" of property, and "hostility to constitutionally-protected activity on the premises." *Eichenlaub*, 385 F.3d at 285–86.

The Kohans have not alleged any conduct by Latrobe or its officials that rise to the requisite level of egregiousness. Taking the facts stated in the Complaint as true and viewing them in the light most favorable to the Plaintiffs, the Kohans have alleged that Latrobe knew of a litany of code violations on the Szekelys' neighboring property, permitted the violations to continue, and falsely told the Kohans that the city would address the violations while harboring an ulterior motive to rehabilitate or renovate the Szekelys' property.

These allegations, in isolation or in combination, do not rise to the level of shocking the contemporary conscience. *See Sanford v. Stiles*, 456 F.3d 298, 304 (3d Cir. 2006) ("Generally, the Due Process Clause does not impose an affirmative duty upon the state to protect citizens from the acts of private individuals." (citing *DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.,* 489 U.S. 189, 198–200 (1989))). Permitting code violations that together might make the Szekely property a nuisance does not rise to the level of a "virtual taking" of the Kohans' neighboring property or otherwise conscience-shocking behavior. Latrobe officials are by law vested with broad discretion in determining both whether and how to enforce property maintenance codes. *See* Latrobe, Pa. Mun. Code § 132-9 (stating a code enforcement officer

"*may*" issue a notice of violation, but may also "*at their discretion*" enter into a "corrective action plan" with someone who violates the code); *cf. Heckler v. Chaney*, 470 U.S. 821, 831 (1985) ("This Court has recognized on several occasions over many years that an agency's decision not to prosecute or enforce, whether through civil or criminal process, is a decision generally committed to an agency's absolute discretion.").

It also appears that if Latrobe's alleged conspiracy to remediate the Szekelys' property rather than issue citations had been successful, the source of the injuries the Kohans allege they experienced as a result of the conspiracy would have been remediated, obviating any further harm to them of any type. The Kohans also do not allege that, had Latrobe issued citations to the Szekelys, the result would necessarily have been that the code violations would be corrected. Essentially, the Kohans allege that Latrobe's failure to take action that might not have prevented their emotional distress, while instead pursuing a plan that might have alleviated it, is so egregious that it shocks the conscience. It does not. Apart from the illogic of the Plaintiff's position on this point, Latrobe's choice to not to enforce a property maintenance code or to alternatively pursue corrective relief instead of punishment is instead well within the actions that might be expected of a city government, particularly if the result of that conduct was the mitigation of the harms asserted by the Plaintiffs. *See, e.g.*, *Eichenlaub*, 385 F.3d at 286 (holding that selective enforcement of zoning laws did not violate substantive due process because the conduct was not motivated by corruption or racial discrimination).

Neither does the allegation that Latrobe officials misled the Kohans about their plans to enforce or not enforce city codes on the Szekelys' property; Plaintiffs provide no authority for the proposition that they had a federally-protected right to accurate information about the actions being taken or to be taken by the city with or against the Szekelys or their property. The

misconduct alleged, as a matter of law, does not rise sufficiently above that at issue in a normal dispute over the appropriate enforcement of city codes to pass the shocks the conscience test. S*ee Eichenlaub*, 385 F.3d at 286.

The Kohans alternatively plead their substantive due process claim should proceed under either the "state-created danger" or "special relationship" theories of liability under § 1983. (ECF No. 26, at 10–11). A state-created danger theory of liability, however, still requires Plaintiffs to allege a degree of culpability that shocks the conscience. *Ye v. United States*, 484 F.3d 634, 638 (3d Cir. 2007); *Bright v. Westmoreland County,* 443 F.3d 276, 281 (3d Cir. 2006). As discussed above, the Kohans have not alleged behavior by Latrobe that shocks the conscience, and so they have failed to state a claim under the state-created danger theory of liability.

Plaintiffs likewise fail to state a claim under the "special relationship" alternative theory of liability. To sufficiently allege that a special relationship exists such that the State owes Plaintiffs an affirmative duty to protect them, Plaintiffs must allege that they suffered a "restraint of personal liberty" sufficiently similar to "incarceration [or] institutionalization" at the hands of the State, otherwise the duty has not been created. *Morrow v. Balaski*, 719 F.3d 160, 168 (3d Cir. 2013), *as amended* (June 14, 2013) (quoting *DeShaney,* 489 U.S. at 200). Plaintiffs do not allege that Latrobe restrained their liberty; they only claim that Latrobe made public and private promises to assist them. (ECF No. 26, at 10). A special relationship, however, is not created by "the State's knowledge of the individual's predicament or from its expressions of intent to help him." *Morrow*, 719 F.3d at 168 (quoting *DeShaney*, 489 U.S. at 200). Plaintiffs have therefore also failed to state a claim under a special relationship theory of liability.

Because Plaintiffs have failed to allege conscience-shocking behavior by Latrobe or facts that create a special relationship between them and Latrobe, Plaintiffs have failed to state a claim

for violation of their substantive due process rights.

B. *Equal protection*

The Kohans also allege that Defendants violated the Equal Protection Clause of the Fourteenth Amendment by treating them differently from other similarly situated citizens, creating a "class of one." Compl. ¶ 42. To sufficiently allege a class of one claim, Plaintiffs must allege that they have "been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000). In alleging a violation of the Equal Protection Clause, Plaintiff's must allege they are "alike 'in all relevant respects'" with a group who was treated differently, and those allegations must be "more than conclusory assertions." *Children's Health Def., Inc. v. Rutgers, the State Univ. of New Jersey*, 93 F.4th 66, 84 (3d Cir.), *cert. denied* 144 S. Ct. 2688 (2024) (quoting *Harvard v. Cesnalis*, 973 F.3d 190, 205 (3d Cir. 2020)).

Plaintiffs have not alleged that any other groups or persons are similarly situated or any facts that indicate other groups or persons were treated differently by Latrobe beyond the conclusory statement that Defendants "treat[ed] Plaintiffs differently from others similarly situated." Compl. ¶ 42. This statement does not qualify as an allegation consisting of more than a conclusory assertion and is therefore insufficient to maintain a class of one equal protection claim (or any other claim under modern federal pleading requirements). *See Save Our Saltsburg Schs. v. Blairsville-Saltsburg Sch. Dist.*, No. 2:21-CV-601, 2021 WL 2209294, at *4 n.3 (W.D. Pa. June 1, 2021) ("[M]ere allegations of mistreatment without identification of similarly situated individuals who were treated differently will not support an equal protection claim." (quoting *Archer v. York City Sch. Dist.*, No. 1:13-CV-2826, 2014 WL 12884086, at *9 (M.D. Pa. Feb. 27, 2014))). The existence of similarly situated persons or groups who were treated differently is a

requirement for an equal protection claim, *Children's Health Def., Inc.*, 93 F.4th at 84, which the Kohans acknowledge they have not pled. (ECF No. 25, at 13). In addition to the existence of a similarly situated group, Plaintiffs must plead "how and why" those receiving unequal treatment are similar to Plaintiffs. 93 F.4th at 85. Plaintiffs have not, and failure to do so is "fatal to their equal protection claim." *Id.* (citing *Melrose v. City of Pittsburgh*, 613 F.3d 380, 394 (3d Cir. 2010)).

C. *Failure to intervene*

Plaintiffs also allege that Latrobe violated § 1983 through a failure to intervene to stop the Szekelys' code violations, which the Kohans claim led to violations of their constitutional rights. Compl. ¶ 57. Section 1983 claims for failure to intervene typically arise through the failure of a police officer to intervene to stop the use of excessive force by another police officer. *See Smith v. Mensinger*, 293 F.3d 641, 650 (3d Cir. 2002). Cases permitting failure-to-intervene claims that arise outside of an excessive force context to proceed are rare. *See, e.g.*, *Lozano v. New Jersey*, 9 F.4th 239, 246 n.4 (3d Cir. 2021) (declining to expand failure-to-intervene liability to encompass the failure of a police officer to intervene in another's false arrest).

The Court, however, need not determine whether a failure-to-intervene claim can be brought against city officials for failing to stop allegedly known violations of city maintenance and quality of life codes. Even assuming such a claim could proceed, to properly plead a failure-to-intervene claim, a plaintiff must sufficiently allege: (1) "that her underlying constitutional rights were violated," *Klein v. Madison*, 374 F. Supp. 3d 389, 419 (E.D. Pa. 2019) (quoting *Adams v. Officer Eric Selhorst*, 449 F. App'x 198, 204 (3d Cir. 2011) (non-precedential opinion)); (2) the officer had a duty to intervene; and (3) the officer must have had a "realistic and reasonable opportunity to intervene." *Id.* (quoting *Smith*, 293 F.3d at 650–51).

Plaintiffs do not identify what underlying constitutional right of theirs upon which the conditions at the Szekely property infringed, nor do they allege facts that indicate Latrobe officials had a duty to intervene to remedy those conditions. The harms the Kohans state they experienced from proximity to the litany of code violations they allege the Szekelys engaged in, including excessive noise and vehicle traffic, unpermitted uses of the property, excess garbage, and rodent infestations do not rise to the level of a constitutional violation, but instead sound in state common law nuisance, at best.

Plaintiffs have also not sufficiently alleged that Latrobe had a duty to intervene in conditions at the Szekely property (and they also inconsistently state as a key element throughout the Complaint that Latrobe did intervene by pursuing a policy of remediation and beatification instead of citation). The property maintenance codes the Szekelys are alleged to have been violating are subject to discretionary enforcement by Latrobe, both in whether to enforce the codes and how to enforce the codes. *See* Latrobe, Pa. Mun. Code § 132-9 (stating a code enforcement officer "*may*" issue a notice of violation but may instead "*at their discretion*" enter into a "corrective action plan" with someone who violates the code) (emphasis added). The Court is unaware of any authority that holds the government has a constitutional duty to intervene on behalf of a neighbor to a nuisance property. *See Sanford*, 456 F.3d at 304 ("Generally, the Due Process Clause does not impose an affirmative duty upon the state to protect citizens from the acts of private individuals."). Insofar as the Kohans' allege that Latrobe's failure to intervene stems from promises to issue citations made by city officials that were subsequently broken, these statements are not sufficient create a duty to intervene, and the remedy rests in the democratic process, not the federal courts.

D. *Conspiracy*

To survive a motion to dismiss on a conspiracy claim under § 1983, a plaintiff must allege that "(1) two or more persons conspire to deprive any person of [constitutional rights]; (2) one or more of the conspirators performs ... any overt act in furtherance of the conspiracy; and (3) that overt act injures the plaintiff in his person or property or deprives the plaintiff of any right or privilege of a citizen of the United States," while acting under color of state law. *Jutrowski v. Township. of Riverdale*, 904 F.3d 280, 294 n.15 (3d Cir. 2018) (quoting *Barnes Found. v. Township of Lower Merion*, 242 F.3d 151, 162 (3d Cir. 2001)) (alteration in original).

Plaintiffs succinctly summarized their § 1983 conspiracy claim with the statement that "[t]he Defendants … notwithstanding their actual knowledge of the Szekelys violation of both the Latrobe Maintenance and Quality of Life Codes, concealed from the Plaintiffs a plan to not enforce the various multiple code violations, but rather to remodel or renovate the Szekely property." Compl. ¶ 48 (cleaned up). Plaintiffs have not alleged facts that, if taken as true, would indicate that Latrobe officials conspired to deprive the Kohans of their constitutional rights. Plaintiffs allege that Latrobe officials conspired to assist the Szekelys by renovating their property and to deceive the Kohans about whether code enforcement actions would be taken against the Szekelys. These allegations suffer from the same pleading defect as the failure-to-intervene claim; Plaintiffs do not identify what constitutional right they are claiming city officials conspired to deprive them of, nor do they plead sufficient facts for the Court to infer the constitutional right.

Plaintiffs appear to take issue with *how* the codes were enforced, not whether they were enforced. The Kohans' conspiracy claim simultaneously states that Latrobe conspired to remodel or renovate the Szekely property, but also conspired to permit the Szekelys to live in "squalor" at a "nuisance" property. *Id.* at ¶ 28, 48, 50. Apart from the fundamentally illogical contradictions

in such allegations, a conspiracy with either of these ends is not sufficient to state a conspiracy claim under § 1983 because neither of these ends would deprive Plaintiffs of a constitutional right.

Plaintiffs' conspiracy claim suffers from an additional defect. Plaintiffs do not describe how any overt act taken in furtherance of a conspiracy to either renovate or decline to enforce municipal codes at someone else's property injured them. The Kohans' claims presuppose that the Szekelys were violating municipal ordinances before the city failed to act. Living next to a nuisance property might involve injuries, but Plaintiffs do not allege an overt act by Latrobe officials that *led* to the property becoming a nuisance or to other injuries. A § 1983 conspiracy claim requires that an *act in furtherance of the conspiracy* injured Plaintiffs; an injury unrelated to an overt act in the conspiracy does not suffice. *Jutrowski*, 904 F.3d at 294 n.15.

For the reasons stated above, the Complaint against the City of Latrobe, Eric Bartels, Terry Carcella, Richard Bosco, Daniel Weimer, and David Matheny is DISMISSED in its entirety.

**CONCLUSION**

For the reasons set forth above, the Motions to Dismiss, (ECF Nos. 18, 23), are GRANTED. The Complaint is therefore DISMISSED WITHOUT PREJUDICE. Plaintiffs are granted leave to amend their Complaint. Such Amended Complaint must be filed within twenty-one (21) days of the date of this Order. Any responsive filing as to an Amended Complaint made pursuant to Federal Rule of Civil Procedure 12 shall be filed by the Defendants within twenty-one (21) days of the date of the filing of the Amended Complaint.

/s/ Mark R. Hornak
Mark R. Hornak
United States District Judge

Dated: September 30, 2026